And that means both matters will stand submitted. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Good morning, Your Honors, and may it please the Court. This case is about the location of an air inlet on a passenger vehicle. Do you agree that Claim 1 is illustrative? I think that there are certainly differences. There were two sets of claims here. I think it's the error of, well, let me say it this way, Your Honor, I hope this answers your question. The error in Claim 1 infects the remainder of the claim. So if Your Honors were to find that there was an error with the treatment of Claim 1, I think that would require addressing the remainder of the claims. Supposing we find no error in the treatment of Claim 1? I think if you find no error in the treatment of Claim 1, I think the judgment of the Board stands. On page 11 of the red brief, Polaris says that the Board found that a person of skill, quote, would understand, Sunstall discloses a vehicle, I'm quoting, with the CVT air intake, I'm inserting air, air intake inlet covered from above, close quote, and that you don't challenge that finding of fact on appeal. Is that correct? That's correct, Your Honor, and that was a separate ground that we had raised as a motivation to combine, but it doesn't, it was distinct from the ground that we're challenging on appeal here. And as the, sorry. We're narrowing things. Yes, Your Honor. But that is correct then? That is correct. The ground we're challenging on appeal is this blockage issue, and as the Board had found below, had any of these grounds been sufficient to provide a motivation to combine, it would have been enough. On page 16 of the blue brief, you say the Board excluded evidence that passenger compartment inlets are susceptible to blocking. Show me in the record where they excluded evidence, or do you mean your denial? Yes, Your Honor, that is what I mean. I mean the denial of our motion. For additional discovery. Yes, Your Honor. That's not exclusion of evidence, is it? Well, maybe it's a problem with the way we worded it. It's one of those legal words. Yes, there was not evidence that they looked at and excluded. In fact, they didn't look at it because we weren't permitted to present because of the protective order issue. When I refer to that, Your Honor, that was the denial of our motion, yes. On page 16 of the gray brief, you say that Polaris took the position in the IPR that a person still, quote, would not believe there were blockage issues with Sunstall. The Board, on page 48 of the joint appendix, says that this mischaracterizes Polaris' argument. How is the Board wrong? I think that the Board is wrong here. The Board is wrong in its analysis because what we said was you have two vehicles at issue here. You've got the Sunstall vehicle and you've got the Razor vehicle, which was the embodiment of the Sunstall vehicle. The Board found that in its final decision. That's not disputed here on appeal. I think where the Board got it wrong is our point in our motion to the Board was you have two vehicles, both of which have an air inlet in the passenger compartment. And so when there is testimony in the district court from Polaris' witnesses that a vehicle, the Razor vehicle, with inlets in the passenger compartment had known blockage issues which could have been solved by moving the air inlet to the side, that testimony of the physical embodiment of Sunstall is directly relevant to the argument with respect to Sunstall. And I think the Board's sort of shifted between its decision on the evidentiary issue where it, for whatever reason, wasn't making that connection to its final written decision. But those facts, that it's an embodiment and they both have a location in the passenger compartment, are undisputed here. I want to talk a little bit about this issue, this problem-based motivation that the Board was stuck on. The purpose of side air inlets, as we talk about in our brief, is to bring cool, clean air into the vehicle, whether it's a CVT or the engine. And so in order to do that, you need to position the air inlets where they're going to receive that cool, clean air. And the Brown Patent teaches that, unlike the Sunstall Patent, which has the air inlets. Where in the record below did you argue? I think I saw that you had four reasons for modification. And this cool, clean air one, I don't think that was presented to the Board. Yeah, so Your Honor, if you go to our appendix here, it's in page 26 through 30, which is starting in appendix 196. And what we say, and this is appendix 197, is... Hang on, just give me one second to catch up with you. Yes, Your Honor. And what is this document I'm looking at? You are looking at our petition. Okay. And in our petition, what we say is that on page 197, we talk generally about Brown and Suzuki. We say a person of ordinary skill would have been motivated to implement that configuration for the purposes of achieving several known benefits. And then when you move to page 29, we say one of those benefits is a reduced likelihood of object passengers blocking or restricting the flow of cooling fresh air into the CVT. And so that's what I'm talking about when we talk about... Yeah, but wasn't that more like if something got stuck in there, like because there was an understanding that the inlet was open? No, Your Honor. I think it's really two things. And Dr. Davis, our expert, talks about this as well in his declaration. But it's really two things. So that location on the outside of the vehicle has a benefit of getting that flow of cool, fresh air as an absolute matter. Whether Sunstall is blocked or not, that's a benefit of that location. And that's why we phrase it the way we did. And we say, look, it gives you that benefit, and that benefit is particularly poignant here. But you have to realize, I mean, this says reduce the likelihood of objects or passengers blocking the flow of cool, fresh air. It doesn't say there isn't a good flow of cool, fresh air in the location where it's currently... I mean, I understand what you're saying. We'll just leave it at that. Okay. I mean, the way you phrased it here, blocking or restricting, the board, as I understand it, thought that you meant that you're actually, people are blocking it, not that there's a better location for cool, fresh air on the side of the vehicle versus in the middle of the vehicle. And I think that's an argument that Polaris highlighted in their patent owner response, too. And so in our reply, we went back and we said that this is... We cited the unwired planet case in our reply. We said, Your Honors... You're saying in your reply before this court? I'm sorry. No, in our reply to the board. Okay. So we make the point in our petition, Polaris says in their response, the double down on this blockage issue. We say in our reply, you can't, board, rely on just the problem. There is the positive motivation, so to speak, of this location outside the Brown location providing for this better airflow. Why does Brown do a better job of that than Suzuki in terms of blocking or restricting airflow? Yeah. As far as we know, Suzuki is down underneath someplace, right? Yeah. So what Brown does as a better job is Suzuki teaches the general idea of extending from the CVT... Suzuki is sucking in air down below somewhere. Yeah, and that's somewhere, Your Honor, what our experts... I'm just saying, why is there any showing that Brown solves the blockage problem any better than Suzuki? Because... Because we're showing that there's a problem with air intake in Suzuki. Well, again, our point with respect to Suzuki is that it's still... And so what we said is that Brown provides a location that facilitates cool air without the interference that would arise if the intake were enclosed or otherwise obstructed by side paneling. So Suzuki moves the area... We don't know. Suzuki's drawings don't tell us where it actually... the opening is that sucks the air in, right? Well, but what it does say is that it could be partially enclosed. And so Brown provides that additional motivation, Your Honor. It tells us explicitly what Suzuki may suggest. It tells us explicitly you can move that... In a vehicle with paneling, like the Sunstar vehicle, you can move that inlet out to the side paneling and get those benefits of the cool air. To expose it to the open air where it could suck in leaves and all sorts of other things. And that is potentially, Your Honor. I don't think that... The problem, though, with that rationale is... And Polaris points to some of these potential downsides. The problem with using those as a basis to affirm, so to speak, is the board never performed the weighing on the other side of the scale. And so I think what they're really asking you to do... The Browns are irrelevant unless you get past... You've got to get Suzuki and the other one combined, right? You agree? Well, I think what we're sort of proposing, Brown and Suzuki collectively teach something. You argue that, at 19, that PTAB did not consider Arctic Cat's arguments about the Brown reference. You say they failed to consider any of Arctic Cat's evidence on this issue or address its arguments in any way. That's just not true. What the board did is it found it unsupportive. They say, even accepting that a person of skill would have been motivated to combine Sunstall and Suzuki, Arctic Cat, quote, has not explained why there would have been reason to further modify the combination of a few of Brown to extend the inlet. Finding an argument unsupported isn't the same as failing to consider it. Well, but I think that the board is still stuck on their problem-based motivation there. They do say, you're right, on page 39 of the appendix, they say Suzuki solves this problem, but they then don't go on to address the additional motivations that were provided by Brown, which we have that cool, fresh air running by, as opposed to being near the engine, or potentially encapsulated by the paneling, as Suzuki could potentially be. So there's nowhere where the board addresses that argument. Earlier you said that in your reply brief you made clear the point that locating the inlet on the exterior of the car provides more access to cool air, that you clarified that or supplemented it in your reply brief. Is it proper for the board to consider arguments that are made for the first time in a reply brief? Just assuming for a minute that it's made. I understand you have a different view of whether it was made in the petition or not. I think that this court has said that if an argument is raised wholesale new in the reply brief, the board need not consider it. Because your complaint is that the board didn't consider it, right? Yes, our complaint is that the board did not consider it. I think we raised it in our petition. We raised it in our opening declaration of our expert. I think there's some clarification that goes on as the issues get funneled, and that's what was happening in our reply brief, not a wholesale raising of a new issue. You're in your response. Thank you, Your Honor. I'd like to reserve it unless Your Honor has some further questions. We'll let you keep 2-2-2. Thank you, Your Honor. You know, before your time starts to run, go ahead. You moved to use this, but I was saying to the other judges that we ought to require counsel when they do this kind of thing to sign a waiver saying if anybody breaks anything of their own, like a leg, we're not responsible for what they do. I think that's fair. Go ahead. It may have pleased the court. Mr. Carlson, do you agree that Claim 1 is illustrative? With respect to the others, yes. Whatever happens with Claim 1 would affect all the others. But ARDIC's appeal and the argument today ignores a fact that undermines this entire case, and that is that the IPR was built on a fatally defective construction of the Sunsdall reference. And what I've done is to show you a page from the reference showing Figure 25. And what they did was they took this figure out of context of the rest of the patent. The record will reflect that you're drawing in pink on that. Yes, I drew on the Figure 25 to identify the Part 218. And they took that out of context, and they said that what this shows is that the inlet is open to the sky. But the board thoroughly examined the reference. And that proved to be a mistake. It proved to be a fatal mistake because their entire case was based upon that. They're the master of their petition. They decide what reference they want to rely upon, and they decide what the arguments are that they want to use relative to that reference. And that's the reference they relied upon and the configuration that was the basis of their entire case, and in particular, the motivations that they raised. What they said was that with a... Right, because if you were trying to avoid having birds not dropping their eggs down your intake valve, right, you'd put it on the side where the bird couldn't drop. Right. What they were saying is that's a terrible configuration. If it was true, it would be. It would be a terrible configuration if it were true, yeah. They said, look, what you're going to do is you're going to get water, you save bird eggs, you're going to get... Suck your iPhone right down into the motor. But that was their petition. Right, but we shouldn't pick on somebody who made a mistake. Well, it's more than that because it's the basis of their petition. It formed what it was that we tried. That was our trial, whether that device would have caused people to be motivated to modify it per Suzuki. That's how they get to Suzuki because that device would have problems with water, they said, with noise. And there was a third thing that they said it was likely to be blocked. It would close spare clothing. Yeah, you can see all those things. But the fact is that as the board found, that wasn't what Suzuki reference disclosed. So... It's a cutaway. It was a cutaway, they said. But all of their motivations were based upon that, and motivations are an issue of fact. And the board found that none of the motivations were accurate, and they have not appealed not only the finding on Suzuki, they haven't appealed the lack of motivations. What about the motivation that was argued before us today about how the external part of the car, it provides the inlet more access to cooler air by placing it externally. And that goes to what we call Step 2. What they said was that there are two steps to the invention. The first step is to combine Suns Doll and Suzuki. And then we get, they said, to Step 2, which is to then use Brown to decide to put the inlet on the side of the car. Now, with respect to that, the court said, look, there's no motivation there either. And they say, well, the court didn't deal with this cool air. Well, it was brought in late, but nevertheless, the court did deal with it. There's no basis to conclude that the court didn't deal with it, except to say that if they, if, let me put it this way, there's no basis for the claim that the air on the side is any cooler than Suns Doll or Suzuki under either of the two configurations of Suzuki. Suzuki said you might have a side panel or you might not. But if the board, unfortunately, did, the board did not reference this, but if they had referenced what they would have said was that, what do you mean cool air? There's nothing about cool air here. There's, it's not in the record? Well, they referenced Brown. I mean, they did reference it. Well, they considered Brown, but the problem was that there was no record at all that the air in Brown was any cooler than any of the other references. Since you're riding around in Arctic temperatures. And in fact, what they said was that there are negatives to having on the side. As you point out, material can get in it if it's in the side. And they showed a. Longer pipe. Just more material, too. Longer pipe. Well, that was another problem, because with a longer pipe, you're going to have more vibration. You're going to have more weight. You're going to bring the. That was all said. All that was said by the court. So what they didn't do was to actually mention the words that these folks, Arctic, are maintaining that the air is cool. And they probably didn't do that because there was no basis for the fact that the air out there was any better than in any of the other references. You're riding around in an open vehicle, it appears. I'm sorry, I didn't quite hear you. It's not air sealed. The vehicle itself is not air sealed. It appears from looking at the drawing. The vehicle is not sealed, no. No. These are. An air intake can't be blocked. An air intake that has a lid on it doesn't. Air doesn't come in. Right. You can't. All these devices, the air is going to get in there somehow. Right. And air doesn't even have to be cool. I mean, you have air cool, the notion that it has to be cooler than what? There's no record on that. 112 degrees. Yeah. And in particular, as I say, there's no record of the fact that in a brown device where you go to step two, your honor, that that air is any better than the air or cooler than the air in Sunstall or Suzuki. There's just no record on that. That's their theme. It's their rhetoric. Why do you need brown at all? I mean, if they can't prove that one skill in the art would have gone to the step of moving it to the side as opposed to coming up supposedly to the top. That's my point. Case is over, isn't it? This thing fails for the lack of being able to prove step one or step two. That's what I mean. You don't get the brown until you're halfway to the side of the car. Oh, and I think the board said that. Yeah. So it failed for both of those reasons. Now, they didn't talk about the discovery motion, and I'll pass on that unless you have some questions. Well, you didn't just open it for them. I think they mentioned it. Okay. Yeah, I think he mentioned it. He didn't get into it. I asked a question. He asked a question. The problem with their discovery motion was that they were asking for some depositions that related to a different structure than Sunstall, as they were saying, was configured. And the problem was created further by the fact that they never even said that that structure that is the subject of depositions was a Sunstall structure. They never said it's made in accordance with the claims. They never said anything like that. What they claimed was that the depositions relate generally to the problems you're going to have if you have an inlet that is near the passenger compartment. Okay? And the board said, well, wait a minute. That's not what Polaris' argument is. Polaris is saying Sunstall doesn't have a problem, and your evidence that you're trying to put in relates to generally whether there is a problem if you put an inlet in a passenger compartment. And in the context of an IPR, they said that wasn't sufficiently related. But moreover, there were two other reasons that were given as well for denying that discovery. And they don't appeal either of those reasons, and the board relied upon those. One of them was that it was too late. They had waited too long. And the second one was they had made no effort whatsoever to show that they could not get this evidence by some other means. Now, they come in here and say, well, we can't get it by any other means. But they didn't tell the district court that. They didn't try to point out any other ways that they could have done it. They didn't say that they couldn't get it another way. So the reality is that the motion for additional discovery was denied for three reasons, two of which they don't even appeal. And it was a procedural reason. And it's an abuse of discretion standard of review. Abuse of discretion standard of review. Yes. So I'll sit down, unless you have any further questions of me. Nope. That's a breath of fresh air. Cool fresh air. Don't trip on that thing. I'll be careful, Your Honor. I want to make just a couple points here. The first is, I think my colleague said that our entire argument depended on this open to the sky rationale of the Sunstall configuration. And what we actually said is that was one of several different motivations, independent motivations. If that was open to the sky, that was a motivation to move to the side. But that's a separate motivation from whether it's blocked. On this issue about cooling air. The other motivations was? I think there were four. It was the blockage issue. It was the open to the sky issue. And then there was a noise issue as well. It's directing noise to the passenger as opposed to outside of the vehicle. You said there were four. Well, the fourth that we had raised was, I guess, a KSR type argument. The noise issue depended on the thing being sticked up between the two people sitting there. Well, it depended on it being generally. Our rationale was it was in the passenger compartment right near the passengers, in our view, shooting the noise straight up towards them as opposed to outside. But the facts disprove that. And that's why we're not appealing that issue, Your Honor. So that rationale, goodbye. It went down with the first one. That's right. Well, yeah, it went down. We're only appealing the blockage. You're left with cool air and what else? Cool air is what we're appealing here, Your Honor. And on that point, there is evidence on this cooler air on the side of the vehicle. I direct Your Honor to Appendix 304 to 305, where Dr. Davis, our expert, says, at typical operating temperatures, it is better to supply cool, fresh air rather than hot air. Thus, air inlets are often located so that they draw cool, fresh air from outside of the engine compartment. And that's the difference here. The inlet in Sunsell is near the engine compartment, so it's drawing hot air into those internal components as opposed to ambient air. Suzuki, we don't know where Suzuki is drawing it. Right? Well, and I guess the point is Suzuki doesn't get there, so you need Brown to get to what Dr. Davis, our expert, is saying is that motivation. And I've got five seconds left, so I'll direct Your Honors to Appendix 5880, which is Dr. Davis's reply declaration, Paragraph 20, which, again, reiterates this point about the need to get cool air as opposed to air from the engine area. We'll look and see what he's saying. Thank you, Your Honors. This matter stands admitted.